### THE AGUAN.[1]

#### HONDURAS & C. A. S. S. Co. *v.* $9,500 IN SILVER SPECIE.

*(District Court, S. D. New York. November 19, 1891.)*

1. SALVAGE—MASTER AS SALVOR.
    In disaster the ship-master is agent of the cargo as well as of the ship, and he is but fulfilling his legal duty in providing for the safety of such of the cargo as can be saved, and is not entitled to salvage compensation therefor.

2. SAME—SEAMEN AS SALVORS.
    Seamen who assist in saving cargo after the ship is wrecked, and the voyage broken up and the crew discharged, are entitled to extra compensation.

3. SAME—STATEMENT—STRANDING.
    A steam-ship ran aground on a well-known shoal, in clear weather, at sea, and became a total loss. The passengers and 31 of the crew were discharged, and sent by a small steamer to the port of destination. The master retained seven of the crew to guard $9,500 specie on board the vessel, and subsequently removed it from her to a small island, from which they finally brought it in a small boat to a place of safety. The work was not dangerous or arduous. *Held* that, apart from his presumptive negligence in stranding the vessel, the master was not entitled to salvage, but that compensation of $1,000 should be paid to the seven sailors.

In Admiralty. Suit to recover salvage.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

*Wheeler, Cortis & Godkin*, for libelants.
*Butler, Stillman & Hubbard* and *Mr. Mynderse*, for claimants.

BROWN, J.   At about 3 o'clock in the morning of March 26, 1891, the steamer Aguan, on a voyage from New York to Greytown, Central America, stranded on the outer shoals of Roncador island, about 6 miles from that island, and 300 miles from Greytown.   The island of Roncador has no inhabitants except fishermen, who have huts there for a part of the year.   Forty passengers, with provisions and baggage, were landed at Roncador on the same day, and the chief officer, with 4 men, was dispatched in a boat to Corn island, some 200 miles distant, for the small steamer Presidente Carazo, belonging to one of the passengers on board, which arrived on the 31st day of March, and took the passengers and 31 of the crew, and the baggage, to Greytown.   All hope of saving the Aguan had been abandoned, and, as the owner of the small steamer refused to take more than the passengers, crew, and baggage, the master, with 7 of the crew, which in all numbered 39, remained for the purpose of guarding the specie on board until the Carazo, which promised to return at once after landing the passengers at Greytown, should come back, and take them and the specie thither.   On the 4th of April, the Carazo not having yet returned, and the weather becoming somewhat threatening, and the steamer seeming likely to break up soon, the specie, which was in 3 casks, and weighed about 800 pounds, was removed to the island, about 6 miles distant, with the assistance of a fishing boat and schooner.   On the 7th of April, nothing being heard from the Carazo, the master and the remaining 7 of the crew started for Greytown in a small two-masted sail-boat, taken from the ship, carrying the specie with them.   They arrived at Greytown on the 8th, put the specie on the libelant's steamer Hindoo, a sister ship, notified the consignee at Greytown, and asked one-third the amount as salvage compensation.   This, being refused, the specie was brought to New York, and the present libel filed by the owners of the Hindoo and Aguan, and by the master and seamen who remained by the ship.

Without considering the question of the presumptive negligence of the master in running his vessel upon a well-known shoal in fine weather, the master is not entitled to salvage compensation, for the reason that the proofs do not show any such extraordinary circumstances, or any such service outside of the line of his duty, as to entitle him to a salvage reward.   In disaster the master is the agent and representative of the cargo, as well as of the ship, as respects all matters connected with its safety and preservation, so far as preservation is possible.   In cases of stranding, it is his duty to provide for the safety of such of the cargo as can be saved.   In arranging for the return of the Presidente Carazo from Greytown to take the specie which she had refused to take upon her first trip, the master was only fulfilling his legal duty.   The arrangement was a simple and proper one, upon which he had a right to rely.   It did not apparently involve any danger, and but small inconvenience. Why the Carazo did not return, we are not told.   The agent of the libel-

ant company, who went to Greytown in her, and who verified the libel in this case, if he knew the reason, has not disclosed it. But that is not, perhaps, material. Though her failure to come back entailed much additional care and labor, it did not change the master's duty as respects the specie.'

As respects the seamen, the case is somewhat different. All hope of saving the ship or of continuing the voyage had been abandoned before the Carazo sailed away. The engagement of the sailors for the ship and the voyage was broken up. Thirty-one of the crew were sent to Greytown, evidently discharged, and the seven who remained should be treated, I think, not as seamen remaining on wages, but as any other persons would be treated who were secured by the master for the purpose of guarding and preserving so much of the cargo as was practicable, after the abandonment of the ship, until the Carazo returned. That seamen after their discharge may be allowed compensation as salvors, where the voyage is broken up, has been repeatedly adjudicated. 3 Kent, Comm. (12th Ed.) 196; *The Blaireau*, 2 Cranch, 240, 269; *The Umattilla*, 29 Fed. Rep. 259; *The Mary Hale*, Marv. Wreck & Salv. 161; *The Holder Borden*, 1 Spr. 144; *The Warrior*, Lush. 476. The old sea laws, while emphasizing the duty of the seamen to stick by the ship, and to save as much as possible of ship or cargo by all reasonable exertions, provide also for extra compensation to seamen over and above their wages, though not discharged, when they have performed this duty. Article 3 of the Rolle of Oleran says: "The master shall allow them a reasonable consideration to carry them home." The ordinance of Philip II. of Spain gave them wages "and a reward out of the goods saved." The laws of the Hanse Towns (article 44) says: "The master ought to reward and satisfy them." The marine ordinance of Louis XIV. (book 3, tit. 4, art. 9) says: "Whatever way they be hired, they shall be over and above paid for the time they are employed in saving the wreck and goods." 2 Valrog. Code Com. § 501; 3 Desjard. Droit Mar. § 716; and see *Reed* v. *Hussey*, Blatchf. & H. 525, 543. That the seamen who remained should receive some extra compensation under circumstances like the present seems to me not only equitable, and authorized by the maritime law, but sustained by sound policy, as an incentive to faithful conduct. I do not find, however, that the actual service was arduous, and the sum of $1,000 will, I think, be a fair and liberal compensation, for which a decree may be entered. with costs.